IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-02432-WYD-KMT

DR. ALLEN FRIEDMAN and
MICHAEL J. NELLIS, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., d/b/a DOLLAR RENT A CAR;
DOLLAR RENT A CAR, INC.; and
DTG OPERATIONS, INC. d/b/a/ DOLLAR RENT A CAR,

      Defendants.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

This matter is before the Court on a review of the pending motions: (1)

Defendants' Motion to Strike Class Allegations Pursuant to Fed. R. Civ. P. 23(d)(1)(D),

(2) Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6),

and (3) Defendants' Request for Judicial Notice.  These motions were all filed on

December 21, 2012, and are fully briefed.

By way of background, Plaintiffs allege in the First Amended Complaint ["FAC"]

that Dollar[1] organized a "scheme to defraud consumers to increase revenues by having

the company's employees and agents trick consumers into buying insurance or other

---

[1] "Dollar" as used herein collectively refers to Defendants Dollar Thrifty Automotive Group, Inc.,
Dollar Rent A Car, Inc. and DTG Operations, Inc.

add-on products they did not want or did not actually or properly consent to being charged for." (FAC ¶ 9.) They further allege that "Dollar has implemented a systematic program nationwide through which its agents illegally charge clients for car insurance, collision damage waiver ("CDW"), roadside assistance and other added 'services' that consumers have specifically declined." (*Id.* ¶ 10.) This scheme has allegedly allowed Dollar "to cheat consumers out of millions of dollars." (*Id.*)

Plaintiff Allen Friedman ["Friedman"] alleges he visited the Dollar facility at the Denver International Airport to pick up a car, and declined the Dollar agent's offer regarding insurance and other service options. (FAC ¶ 11.) He states he "[r]easonably rel[ied] on the Dollar representative's representations as to the appropriate boxes to check to decline all add-on options", and "signed a form" initialing "the areas the employee indicated were to be checked to decline the Dollar insurance and other options." (*Id.*) Friedman alleges that upon later checking the receipt he discovered he was charged for insurance "that he had specifically declined" and "roadside assistance which had not even been proposed or offered to him." (*Id.* ¶ 12.) Friedman further alleges that after receiving a copy of his original contract and addendums, "he realized that his signature had been forged." (*Id.* ¶ 15.)

Plaintiff Michael J. Nellis ["Nellis"] alleges that when he made an on-line reservation to rent a vehicle with Dollar, he declined the insurance and pre-paid gas options. (FAC ¶ 18.) When Nellis arrived at the rental office in Fort Myers, Florida to pick up his car, he "again verbally declined all insurance or other add-ons. . . ." (*Id.*) He was then "asked to initial the charges, which were in small print (in a dark room)." (*Id.*)

Nellis alleges that "[r]easonably relying on the representations of the Dollar representative . . . that he was being charged the correct amount and was being told the correct boxes to check to decline any insurance or other add-ons, he initialed the document." (*Id.*)  When Nellis dropped off the vehicle, he learned that he had been charged for those unwanted add-ons.  (*Id.*)

Plaintiffs claim that "these are not isolated incidents", but "a pattern of conduct that has occurred at a number of Dollar locations located throughout the United States." (FAC ¶¶ 10, 20.)  They allege that "Dollar is aware these practices are on-going and prevalent both in Colorado, Florida and throughout the United States. . . ." (*Id.* ¶ 20.) Plaintiffs bring suit on behalf of themselves and all other consumers similarly situated, alleging that the purported scheme subjects Dollar to liability under the Colorado Consumer Protection Act ["CCPA"], Colo. Rev. Stat. § 6-1-101 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ["FDUTPA"], Fla. Stat. § 501.201 *et seq.*, and the Oklahoma Consumer Protection Act ["OCPA"], Okla. Stat. 15 § 751 *et seq.*  Claims are also asserted for breach of contract, unconscionability, unjust enrichment, and injunctive and declaratory relief.  Dollar seeks to strike the class allegations and dismiss the claims.

II.   ANALYSIS

A.    Motion to Strike Class Allegations

I first address Dollar's Motion to Strike Class Allegations.  I note that Plaintiffs bring suit on behalf of a class defined as follows, "All persons in the United States who, during the past four years, resided in or who while in Colorado and Florida, and such

other states as the Court may determine are appropriate based on the laws that can be applied to such claims, were charged and paid for insurance, collision damage waiver ("CDW"), roadside assistance and other add-on products offered by Dollar employees at the place of rental that they declined or did not authorize or for which their 'consent' was illegally obtained."  (FAC ¶ 25.)

Dollar asserts that it is plain from the face of the FAC that no class can be certified in this case.  It argues that all the causes of action depend upon proof of individualized, oral interactions between renters and Dollar employees.  Further, it asserts that Plaintiffs allege no fraudulent standardized documents or universal fee overcharges; instead, all of the alleged fraud is oral.  Dollar argues that claims based on such specific, individualized proof are not susceptible to class treatment as a matter of law.  It further contends that even ascertaining membership in the putative class would require each putative class member to demonstrate that he or she received and relied upon individual oral communications that were fraudulent.  Dollar argues that no amount of discovery or further amendment of the complaint can cure this flaw, and that where a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action fails.  Accordingly, Dollar requests that the class claims be stricken.

Turning to my analysis, "an insufficient defense or any other redundant, immaterial, impertinent, or scandalous matter" may be stricken from a pleading.  Fed. R. Civ. P. 12(f).  However, as noted by Judge Kane of this Court, "[a] 'motion to strike is a drastic remedy,'" and "'is 'disfavored by the courts.'"  *Francis v. Mead Johnson & Co.*,

No. 10-cv-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010).  Thus, it has

been held that Rule 12(f) motions "'should be denied unless the challenged allegations

have no possible relation or logical connection to the subject matter of the controversy

and may cause some sort of significant prejudice to one or more of the parties to the

action.'"  *Ortiz v. Cooper Tire & Rubber Co.*, No. CIV-13-32-D, 2013 WL 2151674, at *3

(W.D. Okla. May 16, 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice & Procedure* § 1382 (3d. ed.2004)); *see also Sierra Club v. Young Life*

*Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).  "If there is any doubt as

to whether to strike a matter, courts should deny the motion."  *Coder v. Am. Bankers*

*Ins. Co. of Fla.*, No. 12-2231-EFM, 2013 WL 2151583, at *3 (D. Kan. May 16, 2013).

Judge Kane noted that a motion to strike class allegations is even more

disfavored than other motions to strike under Rule 12(f).  *Francis*, 2010 WL 3733023, at

*1.  This is because it "requires a reviewing court to 'preemptively terminate the class

aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and

before plaintiffs are permitted to complete the discovery to which they would otherwise

be entitled on questions relevant to class certification.'"  *Id.* (quoting *Bryant v. Food*

*Lion, Inc.,* 774 F. Supp. 1484, 1495 (D.S.C.1991)).  Consistent with this, federal courts

across the country have denied motions to strike class allegations at the pleading stage.

*See In Re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 616 (N.D.

Cal. 2007) (". . .plaintiffs should at least be given the opportunity to make the case for

certification based on appropriate discovery. . . . Wal-Mart's motions to dismiss or strike

the class allegations are premature and are denied. . . .");  *Paikai v. Gen. Motors Corp.,*

No. S-07-892, 2009 WL 275761, at *11 (E.D. Cal. Feb. 5, 2009) (stating that "the very purpose of allowing separate class certification proceedings" is to defer addressing potential problems with a proposed class to a later date); *In re Bessette,* 279 B.R. 442, 451 (Bankr. D.R.I. 2002) (in denying a motion to strike class allegations on the grounds that plaintiff would be unable to satisfy the class certification requirements as a matter of law, the court stated, "[a]lthough defendant may ultimately be proven correct, at the initial stages of litigation, prior to discovery, defendant cannot prevail because it has a hunch or even a reasonable basis to believe that plaintiff will fail to meet Rule 23's requirements. . . .").

Thus, Judge Kane held as to a motion to strike class allegations under Rule 12(f) that "[t]o prevail at this stage of the proceedings, Defendant must 'demonstrat[e] from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.'" *Francis*, 2010 WL 3733023, at *1 (quoting *Bryant,* 774 F. Supp. at 1495) (emphasis added).  While Dollar argues that Plaintiffs bear the burden of advancing a prima facie showing that the class action requirements are met, *see Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (cited in *Edwards v. Zenimax Corp.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *5-6 (D. Colo. Sept. 25, 2012), it is uncertain if the Tenth Circuit would adopt this requirement in the context of a Rule 12(f) motion.  At most, I believe the Tenth Circuit would require only that the named Plaintiffs "prove that the allegations of their complaint", accepted as true, "satisfy Rule 23(a)'s requirements."  *DG ex rel.*

*Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010).  Under any of the above standards, however, I find that Defendants' motion to strike should be denied.

I first reject Dollar's argument that the class allegations should be stricken because the class is not ascertainable.  Dollar argues in that regard that a decision on the merits of each putative class member's claim would be required to determine if the person is a member of the class, *i.e.*, the Court "would have to conduct mini-hearings for each putative class member to determine if he or she 'declined or did not authorize' the purchase of certain products—notwithstanding the choices reflected in the four corners of the written contract—just to identify which individuals are in the class." (Defs.' Mot. to Strike Class Allegations at 6.)  I disagree.

The FAC alleges "a uniform practice and policy implemented by Dollar" which was "applied consistently to all members of the Class throughout the relevant time period."  (FAC ¶ 25.)  Plaintiffs also allege the similarity of complaints by consumers of this practice and policy occurring at Dollar rental offices around the country, and the uniform or "canned" responses of Dollar to same.  (*Id.* ¶¶ 20-24.)  There would be no need for mini-hearings if these allegations are true.  Moreover, Plaintiffs assert that if they can establish that the "disclosures" provided by Dollar uniformly do not comply with consumer protection laws such as the CCPA, such a showing would constitute a *per se* deceptive business practice and uniform conduct that can be established on a class-wide basis based on common evidence.

For the same reasons, I reject the arguments that the class claims should be stricken because individualized inquiries predominate or because of the absence of any

uniform, classwide proof.   Plaintiffs plainly allege that questions of law and fact common to the class exist.  In addition to the uniform scheme and complaints related to the scheme that are detailed above, Plaintiffs allege that Dollar's acts and practices in connection with the sale of the services detailed in the FAC were deceptive trade practices within the meaning of state consumer protection laws, constitute a systematic breach of contract or are in violation of the other claims set forth in the FAC, and were part of a uniform scheme to unjustly enrich Dollar at the expense of, and to the detriment of, Plaintiffs and other putative class members through a consistent pattern of deception, misrepresentation, omission or outright forgery.  (*See, e.g.*, FAC ¶¶ 11-18.)

Dollar's arguments that the class allegations should be stricken because Plaintiffs cannot show classwide injury and causation are also rejected.  I agree with Judge Kane's analysis in *Francis* on this issue.  He stated as follows:

> Although Defendant alleges the prerequisites to a class action are not met because some members of the class may not have been harmed by Defendant's actions, class certification under Rule 23 *requires neither that 'all class members . . . suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm.' DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). In addition, even at the class certification stage, *courts must generally accept as true the allegations supporting certification and must not base their determination on whether the class will ultimately succeed in establishing each element necessary to prove its claims*.

*Francis*, 2010 WL 3733023, at *1 (emphasis in original).

Finally, I reject Dollar's other arguments in the motion to strike.  I note that Dollar has not shown that the claims at issue are impossible to certify.  Dollar has also not shown that the allegations of the FAC, accepted as true, fail to satisfy Rule 23(a)'s

requirements.  In short, I find that striking the class allegations at this stage of the proceeding is not warranted.  Plaintiffs should be allowed to conduct discovery before the merits of class certification are reached.  Accordingly, Dollar's Motion to Strike Class Allegations is denied.

      B.    <u>Dollar's Request for Judicial Notice and Whether Conversion of the Motion to Dismiss to a Summary Judgment Motion is Required Under Rule 12(d)</u>

I next address whether conversion of the motion to dismiss to a motion for summary judgment is required pursuant to Fed. R. Civ. P. 12(d).  Related to this issue is Dollar's Request for Judicial Notice, which requests that I take judicial notice of Exhibits A-D to the Declaration of Thomas J. Mierendorf ("Mierendorf Declaration") that is attached to Dollar's motion to dismiss.

As noted by my Minute Order of January 22, 2013, both the motion to dismiss and Plaintiffs' opposition to the motion to dismiss attach matters outside the pleadings. Accordingly, pursuant to Rule 12(d), the parties were asked to brief whether conversion of the motion to a summary judgment motion was appropriate.  The parties filed statements in response to my Minute Order on February 1, 2013.  Both parties argue that the motion to dismiss should not be converted to a summary judgment motion, but for different reasons.   Dollar argues, consistent with the Request for Judicial Notice, that the documents attached to the Mierendorf Declaration are central to or incorporated by reference in the FAC and thus may be considered without converting the motion. Plaintiffs argue to the contrary—that the documents attached to the Mierendorf Declaration are extraneous to the FAC and contradict its allegations.  Plaintiffs also

assert that the authenticity of the documents is in dispute.  Accordingly, Plaintiffs request that the Court preclude consideration of these documents and not convert the motion to a summary judgment motion.

I deny Defendants' Request to Take Judicial Notice.  I first note that Defendants are mistaken that judicial notice is appropriate for the type of documents attached to the Mierendorf Declaration.  While the Tenth Circuit has stated that a court may review documents attached to a motion to dismiss without conversion to a summary judgment motion if they are central to the plaintiff's claim and their authenticity is not disputed, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997), this is not the same as judicial notice.  Judicial notice is appropriate only for such things as the court's own files and records and facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

I further find that the exception to conversion argued by Defendants is inapplicable because Plaintiffs dispute the authenticity of the documents attached to the Mierendorf Declaration.  Accordingly, I will not consider that Declaration or the documents attached thereto.  I also decline to consider the Declaration attached to Plaintiffs' opposition to the motion to dismiss.  Therefore, conversion of the motion to dismiss into a summary judgment motion is not required.  Finally, the Request to Take Judicial Notice is denied.

C.   Dollar's Motion to Dismiss

Dollar seeks dismissal of all the claims in the FAC under Fed. R. Civ. P. 12(b)(6). In reviewing a motion filed under that Rule 12(b)(6), the court must "accept all well-

pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of County of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).  To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'"  *Id.* (quotation and internal quotation marks omitted).  "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009)).

A plaintiff "must include enough facts to 'nudge[] his claims across the line from conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted).  Conclusory allegations are not sufficient to survive a motion to dismiss.  *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

### 1.   Whether the CCPA Claim Fails for Lack of a Significant Public Impact

I first address Dollar's argument that the CCPA claim should be dismissed because Plaintiffs have not pled and cannot show a significant public impact—that the harm alleged was directed to the public as a whole.  Rather, Dollar asserts that the FAC pleads individual wrongs by Dollar against each Plaintiff.  Further, Dollar argues that while Plaintiffs make conclusory allegations about an "organized scheme to defraud", the facts alleged in the FAC describe conduct unique to each Plaintiff.

Turning to my analysis, I note that "[t]he CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the

public." *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002).  To sustain a private cause of action under the CCPA a plaintiff must allege:  (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.  *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).  Dollar contests only the third element.

To adequately allege a significant public impact, "plaintiffs' complaint must meet the low burden of setting forth facts that, if proved, could establish a public impact 'upon any theory of the law.'"  *General Steel Domestic Sales, LLC v. Hogan & Hartson, LLP*, 230 P.3d 1275, 1279 (Colo. App. 2010).  Courts consider three factors in assessing the public impact of an allegedly deceptive trade practice: (i) the "'number of consumers directly affected by the challenged practice'", (ii) the "'relative sophistication and bargaining power of the consumers affected by the challenged practice'", and (iii) whether "'the challenged practice has previously impacted other consumers or has significant potential to do so in the future.'"  *Id.* (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003)).

I find under the factors listed above that Plaintiffs have adequately alleged a significant public impact for purposes of the motion to dismiss.  The FAC alleges that many consumers, not just Friedman and Nellis, were affected by the alleged scheme at

issue.  Indeed, the CCPA details similar complaints made by consumers around the country.  Further, I find that the FAC supports an inference that any bargaining power the consumers had regarding declining insurance and other services was disregarded as part of the scheme at issue.  I also find that the FAC alleges that the scheme at issue has previously impacted other consumers and supports an inference that it has significant potential to do so in the future.  Finally, I reject Dollar's argument that Plaintiffs did not plead facts in support of their allegations about the alleged uniform scheme to defraud.

Based on the foregoing, Dollar's motion to dismiss is denied as to the argument that the CCPA claim should be dismissed for failure for failure to show a significant public impact.

2.     Extraterritorial Effect of Consumer Protection Statutes

Dollar next argues that both Plaintiffs' claims under the OCPA fail as a matter of law because neither allege conduct occurring in Oklahoma.  Indeed, the only connection Dollar has with Oklahoma is its presence in the state.  Dollar also argues that Friedman's claim under FDUTPA fails as a matter of law because he has not alleged conduct that occurred in Florida, only Colorado.  Finally, Dollar argues that Nellis' claim under the CCPA fails because he has not alleged any conduct that occurred in Colorado.  Dollar relies on the law that statutes are presumed not to apply to conduct occurring outside the jurisdiction in which the statute was enacted.

Turning to my analysis, according to the Colorado Court of Appeals "the law appears to be well settled that a statute cannot be presumed to have any extraterritorial

-13-

effect." *Peerless Inc. Co. v. Clark*, 487 P.2d 574, 575 (Colo. App. 1971).  In fact, "a

contrary presumption prevails and statutes are generally so construed."  *Id.*  Absent

language in the statute evidencing a contrary intent, Colorado courts presume that a

statutes does not have extraterritorial effect.  *Frontier Airlines, Inc. v. Dep't of Revenue*,

571 P.2d 1088, 1089 (Colo. 1977).

While this Court exercising diversity jurisdiction 'must apply the substantive law"

of Colorado as the forum state, *Blackhawk-Central City Sanitation Dist. V. Am. Guar. &*

*Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000), Oklahoma and Florida courts

appear to be in accord.  *See Allen v. Oakbrook Secs. Corp.*, 763 So.2d 1099, 1101 (Fla.

App. 1999); *Childs v. State ex rel. Okla. State Univ.*, 848 P.2d 571, 578  (Okla. 1993).

Indeed, both states have held that consumer protection statutes are applicable only

when the action at issue occurred in the state.  *Harvell v. Goodyear Tire and Rubber*

*Co.*, 164 P.3d 1028, 1037 (Okla. 2006) ("Courts have generally determined that the

focus of the inquiry concerning application of such an Act to out-of-state consumers is

whether the offending consumer transaction occurred within the state); *Millenium*

*Commc'ns & Fulfillment, Inc. v. Att'y Gen.*, 761 So.2d 1256, 1262 (Fla. App. 2000)

(FDUTPA "seeks to prohibit . . . practices which have transpired *within the territorial*

*boundaries of this state*") (emphasis added).

Plaintiffs have made no showing that the CCPA, OCPA and/or FDUTPA contain

express language that they apply extraterritorially.  Accordingly, the presumption

against extraterritoriality applies, and Plaintiffs have not overcome that presumption.

The cases cited by Plaintiffs in their opposition to the motion to dismiss are inapposite.

The Oklahoma cases addressed which law was applicable in a conflict of law situation, not whether a state statute should be given extraterritorial effect. *See Lobo Exploration Co. v. Amoco Prod. Co.*, 991 P.2d 1048, 1054  (Okla. App. Div. 1 1999); *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974).  The case cited as to FDUTPA did address extraterroriality, but in the context of conduct that applied both in and outside Florida. *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, *5 (S.D. Fla. May 2, 2012).  The court found nothing to suggest that the FDUTPA applies *only* when conduct occurs entirely within Florida. *Id.* at *6.  That is not the situation here, however, where no wrongful conduct was alleged to have occurred in Florida.

Based on the foregoing, I grant Dollar's motion to dismiss as to the OCPA claims by both Plaintiffs.  I also grant the motion to dismiss as to the FDUTPA claim of Friedman and the CCPA claim of Nellis.  Friedman's CCPA claim is not dismissed, however, since it alleges conduct occurring in Colorado.  Nellis' FDUTPA claim, involving conduct in Florida, also remains, although I now turn to Dollar's argument that the voluntary payment doctrine bars that claim.

### 3.    Voluntary Payment Doctrine

Dollar asserts that Nellis' FDUTPA claim must be dismissed under the voluntary payment doctrine, which bars recovery of any payment voluntarily made with knowledge of the facts.  It is argued by Dollar that Nellis' rental agreement and signature caption demonstrate that he had knowledge of the pertinent facts, as he agreed to pay specific amounts for the add-on services at issue.

The motion to dismiss is denied as to this argument.  I stated in Section II.B., *supra*, that the documents relied on by Dollar in support of this argument would not  be considered in connection with the motion to dismiss.  Also, Nellis alleges that he did not have knowledge of the facts, and disputes the authenticity of the documents.  These allegations must be accepted as true at this stage of the litigation.

4.   Breach of Contract Claim

Dollar also argues that Plaintiffs' common law claims fail as a matter of law.  First, it asserts that Plaintiffs fail to allege sufficient facts to support a claim of breach of contract.  I agree.  A plaintiff alleging breach of contract must show "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

In the case at hand, while Plaintiffs allege the existence of a written contract for rental car services (FAC ¶ 55), they do not allege a breach of that contract, *i.e.*, that Dollar failed to perform under the contract.  Instead, they allege that Dollar made misrepresentations, including misrepresenting the boxes for consumers to check or imputing their signature without authorization.  (*Id.* ¶ 57.)  This, however, does not constitute a breach of the contract; indeed, the alleged misrepresentation about the boxes to check occurred before the rental agreements were executed.  While these alleged misrepresentations may be pertinent to a fraud or fraud in the inducement claim, they do not support a breach of contract claim. *See, e.g., White v. Marshall*, 693 F. Supp. 2d 873, 882 (E.D. Wis. 2009) ("A misrepresentation is not a breach of contract.");

*Burns v. Branstetter*, No. 11-cv-1450-BF, 2012 WL 6141481, at *5 (N.D. Tex. Dec. 11, 2012) (denying recovery on breach of contract claim because "Plaintiff presented no evidence that Defendant failed or refused to do an act she had promised to perform. Instead, the thrust of Plaintiff's complaint is that Defendant failed to disclose material information. . . .The issue is one of. . .fraud. . .not breach of contract.").

In so finding, I reject Plaintiffs' argument that the fact the contract was breached by fraud in the inducement operates as a breach of contract claim.  While an action for fraudulent inducement to enter a contract is not inconsistent with an action for breach of contract, the two claims are separate and distinct.  *See Trimble v. City and County of Denver,* 697 P.2d 716, 724 (Colo. 1985); *Tincombe v. Colo. Constr. & Supply Corp.*, 681 P.2d 533, 534 (Colo. App. 1984).  Fraud in the inducement is a tort claim, wherein the defrauded party may bring a claim "against the one guilty of fraud to obtain damages resulting from the fraudulent misrepresentations."  *Trimble*, 697 P.2d at 723-24.  The case relied on by Plaintiffs is inapposite as pointed out by Dollar in its reply brief.

Finally, to the extent Plaintiffs may argue that there was an oral contract, Plaintiffs do not allege any such oral contract in the FAC, the terms of the contract, their performance under the terms of the contract, or how Dollar breached any such contract.  Indeed, Plaintiffs argue that they performed under the *written* rental agreement, not an oral contract.  (Mem. in Opp. to Mot. to Dismiss at 10.)

Based on the foregoing, I grant Dollar's motion to dismiss as to the breach of contract claim.  Since Plaintiffs did not show the existence of a contract, any claim for

breach of the implied covenant of good faith and fair dealing is also dismissed.  *See*

*Amoco Oil Co. v. Ervin*, 908 P.2d 493, 507 n. 6 (Colo. 1996).

            5.    Unjust Enrichment Claim

       Dollar next argues that the unjust enrichment claim fails because there are

express contracts between the parties that govern the subject matter of the claim.  It

also argues that the claim is duplicative of the CCPA and declaratory and injunctive

relief claims as all these theories seek restitution.

       I find at this stage of the litigation that the motion to dismiss should be denied as

to this claim.  While I recognize that unjust enrichment is generally unavailable where

there is an express contract addressing the same subject matter, there are

circumstances where a party to an unenforceable express contract may recover under a

quantum meruit or unjust enrichment claim.  *Dudding v. Norton Frickey & Assocs.,* 11

P.3d 441, 445 (Colo. 2000).  "[T]he equitable doctrine seeks to restore fairness when a

contract fails."  *Id.*

       Here, Friedman alleges that he was charged for things that he had either

expressly declined or which had not even been proposed or offered to him, and that his

signature on the contract was forged.  (FAC ¶¶  9-16.)  Nellis alleges that Dollar's

agents made misrepresentations to him about portions of the contract he initialed.  (*Id.* ¶

18.)  Based on these allegations, there may be circumstances under which the express

contracts could fail.  Moreover, as to the argument that this claim seeks duplicative

recovery in the form of restitution, Fed. R. Civ. P. (8)(a)(3) authorizes a complaint to be

pleaded in the alternative.  Accordingly, I deny the motion to dismiss as to this claim.

6.    Unconscionability

Finally, Dollar argues that the purported claim for "unconscionability" fails because Colorado recognizes no such action.  Plaintiffs do not dispute this.  Thus, I grant the motion to dismiss as to this claim.  While Plaintiffs assert that Oklahoma or Florida law may apply, they have not made this showing at this time under a choice of law analysis.  Thus, I will not consider that argument in connection with the motion to dismiss.

7.    Declaratory and Injunctive Relief

To the extent the motion to dismiss sought to dismiss the claims for declaratory and injunctive relief because they are not stand alone claims, the motion is denied. There are claims remaining upon which Plaintiffs may seek declaratory and/or injunctive relief.

8.    Request for Leave to Amend the Complaint

Finally, I note that Plaintiffs' request in a footnote in their opposition that if the Court grants the motion to dismiss in any respect, they be granted leave to amend to cure any deficiencies.  This request is denied as improper.  *See Calderon v. Kansas Dept. of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999) (a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it); *Leib v. Bonner-Springs Edwardsville Unified Sch. Dist. No. 204*, 2012 WL 3779082, at *5 n. 2 (two sentence request in a footnote for leave to amend was not recognized as a motion to amend as

the plaintiff's "bare request fails to provide notice of the particular basis for amendment and requires the court 'to read the minds of litigants to determine if information justifying an amendment exists'") (quoting *Calderon*, 181 F.3d at 1187).

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Motion to Strike Class Allegations Pursuant to Fed. R. Civ. P. 23(d)(1)(D) (ECF No. 27 )is **DENIED**.  It is

FURTHER ORDERED that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 28) is **GRANTED IN PART AND DENIED IN PART**.  It is granted as to both Plaintiffs' claims under the Oklahoma Consumer Protection Act, the breach of contract claim and the unconscionability claim.  It is also granted as to Friedman's claim under the Florida Deceptive and Unfair Trade Practices Act and Nellis' claim under the Colorado Consumer Protection Act.  It is denied as to Friedman's claim under the Colorado Consumer Protection Act, Nellis' claim under the Florida Deceptive and Unfair Trade Practices Act, and both Plaintiffs' claims for unjust enrichment and declaratory and injunctive relief.  It is

FURTHER ORDERED that Defendants' Request for Judicial Notice (ECF No. 30) is **DENIED**.

Dated:  September 27, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-20-