IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-02432-WYD-KMT

DR. ALLEN FRIEDMAN, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., d/b/a DOLLAR RENT A CAR;
DOLLAR RENT A CAR, INC.; and
DTG OPERATIONS, INC. d/b/a/ DOLLAR RENT A CAR,

      Defendants.

---

### ORDER ON MOTION FOR CLASS CERTIFICATION

---

## I.    <u>INTRODUCTION</u>

THIS MATTER came before the Court on a hearing on Thursday, December 23, 2014, on Plaintiffs' Motion for Class Certification and brief in support thereof filed on October 14, 2014.  This Order addresses the Motion for Class Certification as well as Plaintiffs' Objections to Defendants' Evidence Submitted in Support of Their Opposition filed on November 20, 2014, and Defendants' Objection to the Court's Consideration of the Expert Testimony of Donald R. Lichtenstein filed on December 15, 2014.

By way of background, the Second Amended Complaint ["SAC"] asserts claims against Defendants Dollar Thrifty Automotive Group, Inc., d/b/a Dollar Rent A Car, Dollar Rent a Car, Inc., and Dollar Operations, Inc. d/b/a Dollar Rent a Car [collectively "Dollar"] for violations of the Colorado Consumer Protection Act ["CCPA"] and the Florida Deceptive and Unfair Trade Practices Act ["FDUTPA"], breach of agreements

and breach of the covenant of good faith and fair dealing, and declaratory relief, and

seeks to certify a class action.  Plaintiffs allege that Dollar tricks consumers into buying

Loss Damage Waiver ["LDW"], supplemental liability insurance ["SLI"], and roadside

assistance ["Roadsafe"] [collectively "Add-On Products"] that they declined or were

charged for without proper consent or contrary to disclosure requirements, and/or by

misleading customers into signing up for the services contrary to their initial

agreements.  (SAC, ¶ 10.)[1]  This is allegedly a systematic pattern of conduct that has

occurred at Dollar locations nationally, including Colorado and Florida.  (*Id.* ¶ 11.)

Plaintiffs allege that this scheme has allowed Dollar and its employees to pocket millions

in fees at the expense of victimized consumers.  (*Id.* ¶ 12.)

II.   <u>MOTION FOR CLASS CERTIFICATION</u>

    A.   <u>Plaintiffs' Proposed Class</u>

Plaintiffs seek to represent and have the court certify a class composed of:

> all persons who rented cars from Dollar in Colorado and Florida since
> January 1, 2009 and were charged for LDW, SLI, and/or Road Safe by
> Dollar other than as part of a pre-paid tour reservation.

This differs from the class definition in the SAC, wherein Plaintiffs sought to represent a

class of persons comprised of "all consumers either residing or who rented cars in

Colorado, Florida, and such other states within the United States the Court finds are

appropriate who paid for CDW, insurance, or other products from Dollar that they either

---

[1] According to Dollar, LDW is an agreement with the customer that relieves the customer of financial responsibility for unintentional damage to the rental car.  In Colorado, LDW is a regulated product, but it is not regulated in Florida.  SLI is a liability insurance product that provides coverage against claims by third parties arising from accidents involving the rental car.  This is often secondary to other insurance, and increases the renter's primary liability coverage to $1 million.  RoadSafe provides assistance in the event of problems that may arise with the rental car that are caused by the customer.

declined or were charged for without obtaining proper consent or in violation of statutory requirements during the past four years." (SAC, ¶ 36.)

As grounds for certification of the proposed class, Plaintiffs reiterate that Dollar has implemented a systematic program through which it uniformly violates Colorado and Florida law by signing up customers for LDW and other Add-On Products that consumers do not need or already have through their own insurance or certain credit cards, or even have specifically declined. In Colorado, this scheme allegedly violates Colo. Rev. Stat. §§ 6-1-105 and 6-1-201, *et seq.*, which mandate that car rental companies provide clear and conspicuous statements in advertisements and agreements *prior* to entering into the transaction that warn consumers the "protections" promoted by Dollar may be duplicative of coverage the renter already has. Plaintiffs argue that consumers are not provided these disclosures or, at most, some disclosures are provided *after* the transaction is over or *after* Dollar claims an agreement has already been entered into, which disclosures are irrelevant.

Dollar's conduct, according to Plaintiffs, can be shown to constitute a per se deceptive business practice in Colorado, violates the FDUPTA, and results in unjust enrichment and a systematic breach of agreements. Plaintiffs argue that the uniform practices employed by Dollar can be used to establish its liability on a class-wide basis based on the materiality of the claims and facts at issue, and that Plaintiffs' experiences were typical for victims of this scheme. Thus, they argue that the class is manageable. They further assert that the class is ascertainable, as the class definition is objective. Finally, Plaintiffs assert that the class meets the requirements of Rule 23(a) and can be certified under Rule 23(b)(2) or (3) or Rule 23(c)(4).

B.     Analysis

1.     Rule 23 Legal Standard

"Rule 23(a) states four threshold requirements applicable to all class actions:  (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Additionally, the court must ensure that the class definition is ascertainable and adequately defined. *See Edwards v. Zenimax Media, Inc.*, No. 12-cv-00411-WYD, 2012 WL 4378219, at *4-5 (D. Colo Sept. 25, 2012).  The plaintiff bears the burden of showing that the class complies with Rule 23.  *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2550 (2011) (quotation omitted).  In making a class certification ruling, district courts are required "to conduct a 'rigorous analysis' of Rule 23's requirements."  *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (quotation omitted); *see also Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) ("A party seeking class certification must  show 'under a strict burden of proof' that all four requirements are clearly met.") (quotation omitted).  The court errs in "[r]elaxing and shifting Rule 23(a)'s 'strict burden of proof'" to the party opposing certification, "liberally

constru[ing]" the class certification requirements, or resolving doubts "in favor of certification". *XTO Energy, Inc.*, 725 F.3d at 1218.

In making its rigorous analysis of class certification, the court must address Rule 23's requirements 'through findings,' regardless of whether these findings necessarily 'overlap with issues on the merits.'" *Vallario*, 554 F.3d at 1267 (quotations omitted); *see also Dukes*, 131 S. Ct. at 2551-2552 (noting that frequently the rigorous analysis under Rule 23 "will entail some overlap with the merits of the plaintiff's underlying claim" which "cannot be helped" as the class determination "'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action'") (quotation omitted).  However, class certification does not depend on the merits of the suit.  *Vallerio*, 554 F.3d at 1267.

Moreover, while Plaintiffs have cited cases to the effect that the court must assume the allegations of the complaint to be true, the Supreme Court has now clarified that "Rule 23 does not set forth a mere pleading standard".  *Dukes*, 131 S. Ct. at 2551. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law, etc."  *Id.* (emphasis in original). "'[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to reset on the certification question,'. . . ."  *Id.* (quotation omitted); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (*Dukes* verified that the court should not merely presume that the plaintiffs' allegations in the complaint are true for purposes of class motion without resolving factual and legal issues.").

I now discuss in more detail the requirements of Rule 23 and whether Plaintiffs have satisfied those requirements in this case.

### 2.     Whether the Requirements of Rule 23 Are Met

#### a.     Adequacy of the Class Definition

"Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards*, 2012 WL 4378219, at *5. A class is sufficiently defined if it is "'administratively feasible for the court to determine whether a particular individual is a member.'" *Id*. at *4. "'Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3rd Cir. 2013) (quotation omitted). If the class "can be ascertained by reference to objective criteria", then it is adequately defined. *Edwards*, 2012 WL 4378219, at *4.

Related to ascertainability are problems with overbreadth of the class. A class is overbroad, and should not be certified, if it includes "a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012); *see also Edwards*, 2012 WL 4378219, at *5 (class overbroad where it included all buyers "regardless of whether he or she was ever injured").

I find that Plaintiffs' class as currently defined is ascertainable, as it can be identified through objective proof. It encompasses those consumers who rented a car from Dollar within a specified period of time in a specific geographical area and who were charged for specific additional products. In addition to the over 17,000 consumers who have already complained, Plaintiffs assert that Dollar can identify potential class

members by date, products purchased, and rental location.  Dollar appears to concede

this, noting only that Plaintiffs' original class definition in the SAC was not ascertainable

and that they purportedly changed the class definition in recognition of that.

However, I agree with Dollar that the class definition is overbroad.  I find

persuasive the case of *O'Neill v. The Home Depot, U.S.A., Inc.*, 243 F.R.D. 469 (S.D.

Fla. 2006).  There the proposed class consisted of "all Florida customers who

purchased damage waivers" (similar to LDW in this case) from Home Depot as to rental

equipment.  The court found the proposed class definition inadequate because it was

"overly broad in relation to the issues O'Neill raises", stating:

> By its very terms, the class definition includes individuals who may have benefitted from the same actions which form the basis of Plaintiff's claims and individuals who may have been informed by Home Depot about the details of the damage waiver, contrary to Plaintiff's experiences. By Plaintiff's own definition, the proposed class would include many customers who, in contrast to Plaintiff, knew the damage waiver was optional, as well as understood the scope of the coverage (because, for example, they read the rental agreement or were informed by a Home Depot employee or because they reviewed information displayed at a Home Depot store), and chose to purchase the waiver. . . .Plaintiff's class definition also includes individuals who may have purchased a damage waiver, and following damage to the rented equipment, were not required to pay for repairs they otherwise may have been responsible for.

*Id.* at 477-78.

*O'Neill* further noted that no objective criteria had been proposed to separate the

individuals who did benefit from those who did not benefit from the challenged practices

and "[n]o simple test has been suggested to identify individuals who are similarly

situated to Plaintiff in their tool-rental experiences. . . ."  243 F.R.D. at 478.  Thus, it

found that individual investigations would be necessary and concluded that "[t]he

problems with ascertaining class membership, given Plaintiff's overly broad definition, counsel against a finding that class certification is appropriate." *Id.*

Also instructive is *In re NationsRent Rental Fee Litig.*, No. 06-60924-CIV, 2009 WL 636188 (S.D. Fla. Feb. 24, 2009). There, the plaintiffs sought to certify a class of "[a]ll natural persons and business entities in the United States who rented equipment from any store owned or operated by NationsRent, or any of its affiliated companies from [a specified period], and who paid a Loss/Damage Waiver fee." 2009 WL 636188, at *2. The court found that, as in the *O'Neill* case, the "proposed LDW class is inadequate because it is too broad" as "by definition, Plaintiff's revised LDW class includes customers who may have received a benefit from the LDW." *Id.* at *6; *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming district court's decision that proposed class was not sufficiently definite in class action alleging unjust enrichment and violation of Illinois Consumer Fraud and Deceptive Practices Act as a result of defendant's failure to disclose that Diet Coke contained saccharine; the court stated that the class "could include millions who were not deceived and thus have no grievance" or who bought Diet Coke knowing that it had saccharin; thus, they could not show not show any damage).

Here, similar to the proposed classes in *O'Neill*, *NationsRent*, and *Oshana*, the class definition includes all persons who rented the pertinent Add-On Products from Dollar in Colorado and Florida during the relevant period, even if they purposely chose to purchase the Add-On Products, were not deceived in connection with the purchase of the products, received a benefit from purchasing the products, or were otherwise not injured by same. It also includes people, like Dr. Friedman, who received a full refund

-8-

of his purchase of the Add-on Products.  *See Turcios v. Carma Laboratories, Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) (finding class was overbroad "because it would include consumers who already received refunds and, therefore, have not suffered any damages").  Further, Plaintiffs have not proposed objective criteria by which such individuals could be identified and excluded from the class.  Instead, individualized fact finding would be required as to the millions of people in the class.[2]

I note, however, according to the Seventh Circuit, that problems with overbreadth or unascertainability "can and should be solved by refining the class definition rather than by flatly denying class certification on that basis."  *Messner*, 669 F.3d at 825. Nonetheless, I find that Plaintiffs do not satisfy other requirements of Rule 23.

b.   The Rule 23(a) Requirements

i.   Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Tenth Circuit has indicated that the plaintiff "must produce some evidence or otherwise establish by some reasonable estimate the number of class members who may be involved."  *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978).

Here, Plaintiffs assert that approximately 2.5 million putative class members purchased one or more of the Add-On Products during the relevant time period. Further, Dollar has on record over 17,000 complaints from such persons relating to the purchase of such products, and concedes this is a fraction of actual complaints.  I find

---

[2] As discussed below in connection with the numerosity requirement, Plaintiffs assert that there are over 2.5 million putative class members.

-9-

that either figure satisfies the numerosity requirement.  *See, e.g., Decoteau v. Raemisch*, No. 13-cv-3399-WJM-KMT, 2014 WL 3373670, at *2 (D. Colo. July 10, 2014) (holding class of at least 500 sufficiently numerous and noting that "[c]ourts have found far smaller class sizes … to be sufficiently numerous to satisfy Rule 23(a)(1)").

ii.   <u>Commonality</u>

Commonality requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court recently noted that this requirement is easy to misread, "since '[a]ny competently crafted class complaint literally raises common questions.'"  *Dukes*, 131 S. Ct. at 2551.  It made clear that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury. . . .'"  *Id.*  Further, the claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  What matters "'is not the raising of common questions—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (quotation and internal quotation marks omitted).

I agree with Plaintiffs that there are several issues common to the class in this case.  These include (1) whether Dollar failed to provide disclosures in the manner required by law to the class members; (2) whether Dollar's uniform method of selling the Add-On Products in question was illegal and/or likely to deceive reasonable consumers; and (3) whether putative class members paid a premium for Add-On Products that were duplicative of coverage they had or could obtain at no cost.  However, I find the claims

-10-

do not depend on a common contention that is "of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S. Ct. at 2551.  I further reject Plaintiffs' contention that the answers in a classwide proceedings can be established by common proof based upon common evidence.

I first note that Plaintiffs focus in their briefing on an alleged "per se" violation of the disclosure requirements concerning LDW as a common claim applicable to all. However, this claim is valid only as to persons who rented Dollar cars with Add-On Products in Colorado, not to those who rented cars in Florida.  I previously found by Order of September 27, 2013, that the CCPA does not have extraterritorial effect.  (ECF No. 72 at 13-15.)  While Plaintiffs also cite a violation of the disclosure requirements of Colo. Rev. Stat. 6-1-201, *et seq.*, the CCPA encompasses a violation of these provisions.  Thus, the statutes relied on by Plaintiffs do not apply to the putative class members who rented cars from Dollar in Florida.  *See also Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088, 1089 (Colo. 1977).  Further, even with respect to the Colorado class members, Plaintiffs' allegation of a "per se" violation of disclosure requirements related to LDW under Colo. Rev. Stat. §§ 6-1-203 and 205 has no application to the other optional products that Plaintiffs included in the class definition.

Since there is no "per se" violation of law applicable to all class members, Plaintiffs must establish a "deceptive or unfair" trade practice under the FDUTPA and CCPA by reference to the facts and circumstances of Dollar's practices, and must prove both a causal nexus between the allegedly deceptive practice and the consumer harm and an injury.  *See Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 93 (Colo. 2011)

("Class certification turns on whether Plaintiffs can establish the causation and injury elements of their CCPA claims on a class-wide basis, thereby obviating the need to analyze the face-to-face interactions inherent in each automobile sale"); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. App. 2 Dist. 2006).

Plaintiffs argue, however, that causation and injury can be inferred class wide. They argue that this inference is appropriate as every class member was exposed to uniform deceptive practices through Dollar's website and standardized practices or "uniform scripts" by the agents. Plaintiffs rely on *Schwartz v. Avis Rent a Car Sys., LLC*, No. 11-4052 (JLL), 2014 WL 4272018, at *13 (D.N.J. Aug. 28, 2014) (certifying a class of customers located nationwide who were charged a surcharge in contravention of certain disclosure obligations because Avis' "actions were uniform to all members of the class"); and *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 543 (D. Nev. 2013) (same).

Plaintiffs also argue that the case raises common issues, not individual issues, because under the FDUPTA they only have to prove that an objective reasonable person acting in the same circumstances would likely be deceived by a company's business practice. *Fitzpatrick v. General Mills Inc.*, 263 F.R.D. 687, 695, 697 (S.D. Fla. 2010), *order vac'd*, 635 F.3d 1279 (11th Cir. 2011). They assert that in cases cited by Dollar, such as *O'Neill*, sales representatives were instructed to provide all relevant information to the consumers. Here, the opposite is true, as Dollar agents were specifically told not to advise consumers about the relevant facts in terms of the scope of potentially existing coverage—which is a material part of the non-disclosed information here. Plaintiffs also argued at the hearing that the Court should simply accept their evidence on this issue at this juncture.

I reject Plaintiffs' arguments.  First, while "[r]eliance may be inferred from circumstantial evidence common to a class", "a trial court must rigorously analyze the evidence presented to determine whether the evidence supports a class-wide inference of causation."  *Garcia*, 263 P.3d at 100; *see also Rollins*, 951 So. 2d at 871.  As part of this analysis, the court "must consider not only whether the circumstantial evidence common to the class supports an inference of causation, but also whether any individual evidence refutes such an inference."  *Garcia*, 263 P.3d at 100.  This means that the court must analyze the evidence submitted by Dollar and consider whether that evidence rebuts Plaintiffs' class-wide theory of reliance and injury.  *Id.* at 102; *see also Farmers Ins. Exch. v. Benzing*, 206 P.3d 812, 821-22, 824 (Colo. 2009) (reversing certification on causation where class members relied on material omissions of the defendant in face-to-face transaction, finding "the plaintiff advanced no theory to establish causation and injury on a class-wide basis").

While Plaintiffs argue that Dollar made misleading statements and omissions of material fact that were identical, uniform, and made to all purchasers of the Add-On Products, this is not borne out by the record.  Dollar has presented evidence that the purchase of Add-On Products ultimately turned on the members' individualized face-to-face transactions with Dollar agents at the airports when they went to the rental counter to obtain their cars.[3]  Thus, the case implicates 2.58 million face-to-face individualized

---

[3] According to Dollar, its rental process centers around the in-person counter transaction. (Defs.' Mem. in Opp. to Mot. to Certify Class, Ex. 1, Capsanes Decl. ¶¶ 17, 21, 25.)  Prior to arriving at a Dollar rental center, some customers make a rental reservation, others do not.  Upon arriving at a Dollar location, all customers except loyalty customers interact with a Dollar representative.  (*Id.* ¶ 21.)  The representative orally guides the customer through the rental process, including the choice of any optional products.  (*Id.*)  He or she asks the customer questions to understand the products a customer might wish to purchase.  (*Id.* ¶ 24.)  Customers commonly have questions of their own and the back-and-forth in these oral

transactions in which customers with varying circumstances, preferences, and levels of knowledge about the Add-On Products engaged with thousands of Dollar agents and purchased one of three different products.  When purchases were made, the rates of purchase varied widely between locations, agents, products, and periods.  While Plaintiffs attempt to avoid these individualized issues by alleging that Dollar employees use a uniform "script", Dollar provided evidence that there is no script—only suggested frameworks for how representatives may best explain Dollar's products while answering customers' questions.  (Defs.' Mem. in Opp. to Mot. to Certify Class ["Def.'s Opp'n"], Ex. 1, Capsanes Decl. ¶ 42; Ex. 7, Catanzarite Decl. ¶ 21.)  The discussions with the individual customers could go in any number of unique directions depending on questions asked or information provided.[4]  In this situation, where the circumstances would likely differ as to what was told or understood by the consumer about the purchase of Add-on Products, a plaintiff may not rely on class-wide inferences of causation and injury, and courts find that the commonality requirement is not satisfied.

---

exchanges will vary from transaction to transaction.  (*Id.* ¶ 25; Ex. 7, Catanzarite Decl. ¶ 21.)  Customers' knowledge of the Add-On Products and reasons for purchasing them also vary.

[4] I note that courts have rejected plaintiffs' reliance on "script" allegations in similar circumstances. *See Kowalski v. YellowPages.com, LLC*, No. 10 Civ. 7318(PGG), 2012 WL 1097350, at *15 (S.D.N.Y. March 31, 2012) (even assuming that all "salespeople were trained to structure their sales pitch similarly, this does not demonstrate that members of the putative. . .class were subjected to the same alleged misrepresentations or omissions that caused an 'ascertainable loss'"); *Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 621 (D. Kan. 2008).  Further, I agree with Dollar that its sales data belie any notion that its representatives use uniform practices that achieve a common effect on consumers.  As set out in the declaration of Dollar's expert Sonya Kwon, "there is wide, statistically significant variation in the sales" of the Add-On Products as measured across different Dollar locations, sales agents, periods, and optional products.  (Defs.' Opp'n, Ex. 3 ¶ 14.)  This variability is inconsistent with Plaintiffs' theory of a uniform scheme.  (*Id.*)  I agree with Dollar that even assuming its representatives use identical words in each transaction, the wide variability in Dollar's sales data demonstrates that "different consumers respond differently" to the information provided.  (*Id.* ¶ 15.)

Again, I find the *O'Neill* case instructive.  The *O'Neill* court noted the plaintiff's contention "that Home Depot fails to disclose to its customers that the damage waiver is optional", and that it "purposely avoids informing its customers about the scope of the damage waiver, and that the waiver itself provides no coverage and therefore is a worthless product."  243 F.R.D. at 478.  It stated that "[u]pon a superficial reading, it would appear that questions of fact and law are common to the class, that the claims of the Plaintiff and the claims of the proposed class members are typical, and that defenses to the claims would be common."  *Id.*  However, it found that "while there may be some common issues. . ., there are a substantial number of issues that are not common to the class and claims of the Plaintiff, and defenses of Home Depot, that are not typical of all those that may appear."  *Id.*  This is because "[t]he differences identified in the proposed class members' individual experiences with the purchase of Home Depot's damage waiver precludes a finding of commonality and typicality."  *Id.*

Similarly, the court in the *NationsRent* case found that the requirement of commonality was not met as to a LDW class related to equipment rentals at Home Depot.  2009 WL 636188, at *6.  It stated on that issue that "[t]here was evidence that some customers intentionally chose to purchase LDW as described in the agreement (even if they had an insurance certificate on file) because there was a possible benefit to them", and that some customers did actually receive a benefit in connection with theft or vandalism of the equipment as the LDW relieved the customer from 50% of the amount they were required to pay under the contract for loss due to same.  *Id.* at *7.

Also instructive is *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014).  There, the Ninth Circuit affirmed the district court's finding that the plaintiffs

failed to satisfy the commonality requirement as to a class who all rented tools under the same contract where there was an issue about "variance over time and among the different Home Depot locations, and "any oral notice given by Home Depot employees about the optional nature of the damage waiver during a particular transaction would necessarily be a unique occurrence". *Id.* at 1069; *see also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 673–74 (7th Cir. 2001) (rejecting class certification where "[i]t is unlikely that dealers in different parts of the country said the same things to hundreds of different buyers"); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 146 (3d Cir. 2001) (rejecting class action based on representations made to 280,000 purchasers by 30,000 sales agents); *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (rejecting class certification in case involving "Apple's variable conduct in the course of diverse, individualized transactions").[5]

For the same reasons, the individualized inquiries at issue in the case defeat commonality as to the breach of contract and unjust enrichment claims. While Plaintiffs allege that an on-line reservation is a contract that is breached by additional products

---

[5] Florida cases also support my finding. *See In Re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1277-78, 1282 (S.D. Fla. 2010) (finding that because customers often have "differing abilities to avoid [an] allegedly unfair charge,' an "individualized inquiry is necessary" as to whether practice was reasonably avoidable by the consumer as required by FDUPTA; also whether a practice is "deceptive" requires a "hybrid" analysis that includes an inquiry into each customer's subjective circumstances—where customers have different circumstances such as their level of sophistication, class-wide treatment is inappropriate), *aff'd*, 439 F. App'x 849 (11th Cir. 2011); *Porsche Cars N. Am., Inc. v. Diamond*, 140 So.3d 1090, 1099 (Fla. App. 3 Dist. 2014) ("[w]hen the individual knowledge and experience of the consumer is an important element of the cause of action and its defense, there can be no class-wide proof that injury was not reasonably avoidable"); *Rollins*, 951 So. 2d at 872-73 (finding that in cases involving face-to-face transactions, an individualized inquiry on those elements is required because "the number of possible causative factors and combinations thereof for each of [thousands] of putative class members is quite large"); *Egwuatu v. South Lubes, Inc.*, 976 So. 2d 50, 53–54 (Fla. Dist. Ct. App. 2008) (individualized inquiry required to determine whether customers knew the fee the defendants charged was not a tax).

sold at the rental counter, the parties are free to change a prior agreement.  Whether a putative class member agreed to make a change to the agreement is an individualized question.  Similarly, whether a sale of Add-On Products is unjust is an individualized question that focuses on the individualized circumstances of the sales based on the oral transactions between the putative class members and the Dollar agents.

Again, I find the *Berger* case instructive.  There, the Ninth Circuit affirmed the district court's finding that an unjust enrichment claim was not susceptible to class certification stating, "[w]hether Home Depot's receipt of funds for the damage waiver was unjust or inequitable, thereby justifying restitution, depends on whether Home Depot told its tool rental customers that the waiver was an optional product.  *Berger*, 741 F.3d at 1070.  "This determination. . . necessarily rests on individualized determinations about the language of the contract signed by the customer. . . and the oral representations from Home Depot employees".  *Id.*  Accordingly, the court found the individual issues predominated over the common questions.

Similarly, in *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 683 (S.D. Fla. 2008), the court found that a proposed class who leased equipment pursuant to an agreement and were assessed a processing fee failed to state a common cause of action for deceptive practices or breach of contract.  This was based on the fact that "the circumstances regarding the disclosure and assessment of the full administrative processing fee could vary greatly".  *See also Rollins*, 951 So. 2d at 876-77 ("[t]he individual issues concerning liability and damages that make class certification on the FDUTPA damages claim inappropriate would also predominate in a trial of the contract and unjust enrichment claims. . . the contract and unjust enrichment claims would

require the consideration of additional individualized questions. . . ."); *In Re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1284 (S.D. Fla. 2010) ("courts generally find that unjust enrichment claims are not appropriately certified for class treatment, as common questions will rarely, if ever, predominate"), *aff'd*, 439 F. App'x 849 (11th Cir. 2011).

The cases cited by Plaintiff are distinguishable and/or unpersuasive.  In the *Schwartz* case, the plaintiff asserted that Avis charged a surcharge that was not disclosed and sought to certify a class based on deceptive trade practices.  The court found that commonality could be shown because the plaintiff "will be able to prove this element using common evidence given the fact that Avis entered into a standard form contract ... over the class period and that the surcharge information was presented in a similar manner to most Avis customers for that period".  *Schwartz*, 2014 WL 4272018, at *9.  Similarly, in the *Sobel* case, the court found common questions where the class members' claims arose "out of Hertz's standard practice of quoting and charging unbundled [surcharge for airport concession fees] at Nevada airports."  291 F.R.D. at 541.

Here, the information regarding the Add-On Products that Plaintiffs claim was deceptive was not presented through some type of contract applicable to all class members or in a standardized way such as through a script that was used by all Dollar agents.  Instead, the ultimate purchase of such products turned on the interaction between the customers at the airport rental counter and the Dollar agents.  What the putative class members were told or understood regarding the products, and their reasons for purchasing the products, could have varied greatly depending on the

individualized nature of the communications at issue.  Thus, each claim depends on the class members' particular interactions with Dollar.

iii.   <u>Typicality</u>

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected.'" *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-cv-02757-WYD, 2012 WL 1378531, at *4 (D. Colo. April 20, 2012) (quotation omitted).  While typicality does "not require that every member of the class share a fact situation *identical* to that of the named plaintiff", *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014), typicality is not satisfied when "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).  Further, "[c]ourts of appeal have held that unique defenses [applicable to the named plaintiffs] bear on both the typicality and adequacy of a class representative." *In Re Urethane Antitrust Litig.*, 251 F.R.D. 629, 642 (D. Kan. 2008) (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3rd Cir. 2006) (collecting cases)).

"The commonality and typicality requirements tend to merge." *Gen. Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).  "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so

-19-

interrelated that the interests of the class members will be fairly and adequacy protected in their absence." *Id*.

In the case at hand, I find that the claims of the named Plaintiffs are not typical of the other class members as a whole as they are subject to unique factual circumstances and defenses such that proof of their own claims would not necessarily prove the other putative class members' claims.   For example, Dr. Friedman admits that he did not read any of Dollar's written disclosures concerning the optional products and that he never reads such materials.  Thus, Dollar's alleged failure to make adequate disclosures regarding the Add-On Products could not have influenced his decision. Moreover, he could not have been deceived by any such materials.  Dr. Friedman also received a refund of his LDW/RoadSafe purchase through his credit card, negating any claimed injury.  This makes him susceptible to a challenge to his standing and any claimed injury.  He also did not use the SigCap console because the machine was down, which is a focus of Plaintiffs' allegations as to other class members.  Finally, Dr. Friedman alleges that his signature was forged on the contract showing a LDW and Roadsafe purchase, which again would appear to be atypical of other class members. Similarly as to Mr. Nellis, he not only executed a contract containing LDW charges, he separately initialed those charges.  This was an additional confirmation not done by all other customers.  Thus, while much of Plaintiffs' case focuses on alleged confusion by customers who do not review the printed charges, Mr. Nellis can prove no such theory.

Again, *O'Neill* is instructive.  As in this case, the *O'Neill* case involved "unique defenses which emphasize the differences among the class members and portend that individual issues are likely to predominate", such as the fact that the plaintiff "admitted

-20-

that he did not read the rental agreement" for his first tool rental and that during his second rental, Home Depot refused to remove the damage waiver. *O'Neill*, 243 F.R.D. at 478-79. "The proposed class, however, include[d] individuals who did read the rental agreement and/or who asked that the waiver be removed and who had their requests accommodated. *Id.* at 479. The court concluded:

> While O'Neill certainly may be typical of *some* of the proposed class members, he is not typical of all the myriad class members who may be encountered. . . .Given the likelihood of varied circumstances of the proposed class members, facts that support one class member's alleged claim may adversely affect another member's claim ( *e.g.,* there may be class members who purchased the damage waiver and were not charged when their equipment malfunctioned).

*Id.*; *see also Oshana*, 472 F.3d at 514 (Oshana's claims were not typical of the class as it includes people who knew Diet Coke "contained saccharin and bought it anyway" whereas Oshana claims she was deceived; also Oshana's claim under the Indiana Deceptive Trade Practices Act was "subject to certain specific factual defenses that undermine typicality" and required proof of proximate causation); *Pop's Pancakes*, 251 F.R.D. at 683 (named plaintiffs not typical where representations made to them might have been different then other class members; the fact that one plaintiff could prove its case "would not necessarily establish the elements necessary to prove the other class members' cases"); *NationsRent Rental Fee Litigation*, 2009 WL 636188, at *6.

iv.   <u>Adequacy of Representation</u>:

This requirement ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "focuses on two questions: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) will the named plaintiffs and their counsel vigorously

prosecute the action on behalf of the class." *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243, at *3 (D. Colo. May 28, 2013).

I find that this factor has been satisfied as to Plaintiffs' law firm, Whatley Kallas, LLP, as it has been shown that the firm is composed of experienced consumer class action litigators who have been routinely appointed as class counsel.  I find that Plaintiffs' counsel possess the skill, time, and resources needed to pursue this case to resolution, and that they have vigorously prosecuted this action on the Class's behalf.

As to Plaintiffs, while I do not question that they will vigorously prosecute this action on behalf of the class, I find they are not adequate representatives because they appear to have conflicts with other class members. *See O'Neill*, 243 F.R.D. at 479 (finding that O'Neill could not show that he would fairly and adequately protect the interest of the class "[g]iven the likelihood of varied circumstances of the proposed class members").  As noted in the previous section, Dr. Friedman admitted that his money was refunded, making him subject to the defenses of standing and lack of injury.  He also did not read the disclosure materials and asserts that his signature was forged, which most likely would be inconsistent with a number of the class members' experience.  Mr. Nellis executed the contract for LDW and separately initialed those charges, an additional confirmation not done by all other customers.  Also, Mr. Nellis testified that Dollar's disclosures did not influence him in any way—he already "kn[e]w that information".  (Defs.' Opp'n, Ex. 9, Nellis Dep. at 48:15–49:13.)

Moreover, neither Plaintiff purchased all three of the products.  Dr. Friedman purchased only LDW and Roadsafe.  Mr. Nellis purchased only LDW.  Neither Plaintiff purchased SLI.  Plaintiffs lack standing to assert claims regarding products they did not

purchase.  *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1303 (S.D. Fla. 2014)

("[p]laintiff lacked standing to sue on the 57 products she did not purchase"); *Lieberson*

*v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (named

plaintiff lacked standing with respect to "products she neither purchased nor used").

### 3.    Rule 23(b) Requirements

In addition to the requirements of Rule 23(a), a plaintiff must also meet the

requirements of Rule 23(b).  *Amchem Products*, 521 U.S. at 614.  Plaintiffs seek to

certify a class under Rule 23(b)(2) and (3) or, alternatively, Rule 23(c)(4).

### a.    Rule 23(b)(2)

Fed. R. Civ. P. 23(b)(2) states that a class action may be maintained if Rule

23(a) is satisfied and if "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  I find that certification

is not appropriate under this rule.

First, I find that Plaintiffs have not shown that the class is cohesive so that final

injunctive or declaratory relief is appropriate with respect to the class as a whole.  *See*

*Shook v. Bd. of County Comm'rs of County of El Paso*, 543 F.3d 597 (10th Cir. 2008).

To obtain certification under 23(b)(2) the defendant's actions or inactions must be based

on grounds generally applicable to all class members.  *Id.* at 604.  As discussed

throughout this Order, this case turns on individualized transactions by the putative

class members with thousands of Dollar representatives in Florida and Colorado.  The

actions taken by Dollar as to the named Plaintiffs are individualized as to them and

involve unique facts and defenses that are not applicable to all putative class members.

Second, I find that Plaintiffs have not adequately defined what injunctive/ declaratory relief is applicable to the entire class, *i.e.*, Plaintiffs have not specified the class-wide injunction that would be appropriate to all class members.  While Plaintiffs' opening brief refers to paragraphs 34 and 35 of the Second Amended Complaint (ECF No. 105 at 18), no proposed injunction is specified in those paragraphs.  The prayer for relief seeking declaratory relief and an injunction is very general, and does not specify the unlawful conduct that Plaintiffs seek Dollar from engaging in on a class wide basis.

  As the Tenth Circuit has noted, final injunctive relief must "be appropriate for *the class as a whole*".  *Shook*, 543 F.3d at 604 (emphasis in original).  The class "must be 'amenable to uniform group remedies.'"  *Id.* (quotation omitted).  Certification is not appropriate "under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the alleged wrongful conduct of the defendant".  *Id.*; *see also Dukes*, 131 S. Ct. at 2557.  Indeed, the *Shook* court  stated that "if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members, 'the suit could become unmanageable and little value would be gained in proceeding as a class action" under Rule 23(b)(2).  *Id.*

Finally, this case seeks monetary relief, including "actual, compensatory, statutory and/or exemplary damages".  (SAC at 40.)  The Supreme Court in *Dukes* found that Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.  131 S. Ct. at 2557.  Moreover, I find the monetary relief sought is not merely incidental to the injunctive or declaratory relief.  *Shook*,  543 F.3d at 604 (certification under Rule 23(b)(2) is not permitted where plaintiffs seek monetary relief for the class and such relief "is not

incidental to the injunctive or declaratory relief"); *see also Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995) (affirming holding that "it was not appropriate to certify a class under [23(b)(2)] where the relief sought was primarily money damages.")

b.     Rule 23(b)(3)

"Framed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'" *Amchem Products*, 521 U.S. at 615 (quotation omitted). To certify a class, Rule 23(b)(3) requires a showing that common questions "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products*, 521 U.S. at 623. Rule 23(b)(3)'s predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement." *XTO Energy, Inc*, 725 F.3d at 1220. "[P]redominance may be destroyed if individualized inquiries will overwhelm those questions common to the class." *Id.* As explained by another district court:

> The predominance analysis "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(b)(2); thus, the presence of commonality alone is not sufficient to satisfy Rule 23(b)(3). In contrast to Rule 23(b)(2), Rule 23(b)(3*)* focuses on the relationship between the common and individual issues. . . . "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

-25-

*Sarabri v. Weltman, Weinberg & Reis Co., LPA*, No. 10-cv-1777, 2012 WL 3991734, at *7 (S.D. Cal. Aug. 27, 2012).

In this case, even if the commonality requirement of Rule 23(a) is satisfied, I find that the predominance requirement of Rule 23(b)(3) is not satisfied. Again, whether a customer was deceived by Dollar about the Add-On Products (or whether the purchase of such products breached an agreement or was unjust), turns on the individual face-to-face transactions between the customers and Dollar agents at the rental counter. As a result, the common questions—whether class members were deceived or their purchases were unjust or breached agreements—can not yield a common answer "in one stroke." *Dukes*, 131 S. Ct. at 2551-2552.

Again, I find *O'Neill* persuasive. It noted that "[b]ecause the class allegations are based on the actions of individual Home Depot employees, in order to establish the proposed class claim, O'Neill would have to demonstrate that each individual class member was misled by [an] employee when that member rented equipment", *i.e*, that each time a class member rented a tool, he or she was not informed about the optional nature of the waiver, in violation of Home Depot's written policy. 243 F.R.D. at 480. "This is a highly individualized claim that would require numerous individual verbal accounts as to what occurred and the conversations that took place with Home Depot employees". *Id*. "Courts have consistently rejected requests to certify such types of claims." *Id*. (citing cases).

*O'Neill* also found that common issues did not predominate in connection with the FDUPTA claim, where proof of causation is required, *i.e*. it would have to be shown that each class member was not informed about the optional nature of the damage waiver and that such act caused each member damage. 243 F.R.D. at 480. The court found that

"'[s]uch inquiries would result in a series of mini-trials ... on the issue of causation....'" *Id.* at 481 (quotation omitted).  Further, individual fact-finding would be required to determine whether any member "received an alleged misrepresentation from Home Depot and suffered any damage."  *Id.*  The court also found that O'Neill did not show, "through common proof, [that] he will be able to establish that Home Depot withheld information about the optional nature of the damage waiver from the proposed plaintiffs".  *Id.*  Finally, it noted that "other individual determinations will need to be made to resolve Plaintiff's claim regarding the disclosure of the optional nature of the waiver, such as whether each class member read the rental agreement. . ., and if so, whether or not each knew . . . that the damage waiver was optional."  *Id.*

Similarly, in the *NationsRent Rental Fee Litigation* case, the court found that common issues of law and fact did not predominate.  This was because "[w]ith respect to the LDW, the issue of whether certain customers did actually receive some benefit from the waiver is one which must be determined on an individualized basis."  2009 WL 636188, at *8; *see also Rollins*, 951 So.2d at 871 (the FDUPTA damages claim addressed issues related to termite exterminating company's misdeeds in inducing customers to purchase Orkin for pest control services; the multiple factual determinations that are unique to each member of the class "overwhelm[] any common legal issues related to the provisions of the Contract" and the claim is unmanageable as a class action); *In Re Motions*, 715 F. Supp. 2d at 1277, 1282 (a practice is unlawful under FDUPTA only when it is "not reasonable avoidable by consumers themselves"; because customers often have "differing abilities to avoid [an] allegedly unfair charge", the reasonableness inquiry "depends on numerous individualized inquires that would fly in the face of the requirement that individual issues not

predominate over those common to the class"); *Pop's Pancakes*, 251 F.R.D. at 685-86
(individual issues predominated in class action by restaurants alleging equipment lessor
did not disclose administrative processing fee with respect to whether the invoice was
deceptive to each particular plaintiff).

Plaintiffs assert, however, that similar class have been found to be ascertainable
and were certified in *Pro v. Hertz Equipment Rental Co.*, 2008 WL 5218267 (D.N.J.
2008) and *Weinberg v. Hertz Corp.*, 116 A.D.2d 1, 4 (N.Y. App. Div. 1986).  I find those
cases are unpersuasive.  First, both cases pre-date the *Dukes* case.  The *Weinberg*
case contained little analysis and did not address the fact that individualized inquiries
might be required.  The *Pro* case held that individual issues did not predominate in a
situation where the defendant utilized form contracts and standard sales practices as
the court found the plaintiffs' claims could "be substantiated through the development of
facts common to all class members without an individualized inquiry as to what each
class member was told, motivated by, or believed when he or she purchased the LDW
. . . ."  2008 WL 5218627, at *3.  Here, however, I have rejected Plaintiffs' argument that
the case involves standard sales practices that are uniform to all class members.

Due to the individualized factual and legal inquiries required as to the putative
class, I find there would be significant difficulties in the management of the class action.
Accordingly, I find that a class action as to the proposed class is not the superior
method for adjudicating the claims presented.  *See O'Neill*, 243 F.R.D. at 482.

c.    Rule 23(c)(4)

Finally, I find that certification is not appropriate under Rule 23(c)(4).  This rule
"authorizes certification even if common issues do not predominate over the individual

questions because the common issues can be separated by the court and certified for independent treatment." *Emig v. Am. Tobacco Co., Inc.*, 184 F.R.D. 379, 395 (D. Kan. 1998). Rule 23(c)(4) may be applicable as a way "to preserve the class action model in the face of individualized damages." *XTO Energy, Inc.*, 725 F.3d at 1220 (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1437 & n. * (2013) (Ginsburg, J. and Breyer, J., dissenting) ("A class may be divided into subclasses for adjudication of damages. . . [o]r, . . .a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings.").

Here, however, there are not just individualized damage inquiries, but individualized liability issues. I find that no economy or efficiency will be achieved in light of those issues. *See Emig*, 184 F.R.D. at 395 (certification under Rule 23(c)(4) is proper only when "adjudication of a particular common issue will achieve . . . judicial economy and efficiency.").

III.    CONCLUSION

Based on the foregoing, I find that the proposed class definition does not meet the requirements of Rule 23. Plaintiffs' Motion for Class Certification must thus be denied. I also overrule Plaintiffs' Objections to Defendants' Evidence Submitted in Support of Their Opposition as well as Defendants' Objection to the Court's Consideration of the Expert Testimony of Donald R. Lichtenstein (objecting to consideration of two declarations that were filed in support of class certification).

I note, however, that Plaintiffs' counsel stated at the hearing that, if class certification was not appropriate as to the class as currently defined, the class could be limited to class members who rented cars with Add-On Products from Dollar in

Colorado.  This definition may fare better than the proposed class at issue, particularly as Plaintiffs assert a per se violation of Colorado law that could be applicable to all class members.  However, I express no opinion as to the viability of such a class, as the parties have not briefed whether this revised class definition meets the requirements of Rule 23.  Instead, this could be the subject of a new motion for class certification.

Accordingly, Plaintiffs' Motion to Certify Class will be denied without prejudice. Plaintiffs may, if they wish, file a new motion for class certification with a revised class definition.  *See Warnick v. Dish Network LLC*, 301 F.R.D. 551, 561 (D. Colo. 2014) (denial of class certification motion did not "preclude Plaintiff from filing a new motion for class certification that proposes an ascertainable class supported by the evidence and a reliable methodology and that meets the requirements of Rule 23"); *Donoca v. Dish Network, LLC*, ___ F.R.D. ___, 2014 WL 623396 (D. Colo. Feb. 18, 2014) (noting the denial of certification of class proposed in rely brief but granting leave to plaintiff to file a new motion to certify).  Given the age of this case and the fact that the parties are obviously well versed regarding the class certification issues, this motion shall be filed by February 17, 2015, and briefing will be expedited.

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion for Class Certification filed October 14, 2014 (ECF 104) is **DENIED WITHOUT PREJUDICE**.  It is

FURTHER ORDERED that Plaintiffs may, if they choose, file a new motion for class certification with a revised class definition.  This motion shall be filed on or before **Tuesday, February 17, 2015**.  It is

FURTHER ORDERED that Plaintiffs' Objections to Defendants' Evidence Submitted in Support of Their Opposition to Plaintiffs' Motion for Class Certification filed November 20, 2014 (ECF No. 133) are **OVERRULED**.  It is

FURTHER ORDERED that Defendants' Objection to the Court's Consideration of the Expert Testimony of Donald R. Lichtenstein filed December 15, 2014 (ECF No. 150) is **OVERRULED**.

Dated:  January 27, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge